# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1205 | **DATE** | 7/21/2004 |
| **CASE TITLE** | USA ex rel. Sheila Daniels vs. Callie Baird | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. And what has developed from a review of the parties' submissions is that "it plainly appears...that the petitioner is not entitled to relief in the district court" (Section 2254 Rule 4, as adapted to cases where further input has been provided beyond what might suffice under that rule for summary dismissal). Both the Petition and this action are accordingly dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
ex rel. SHEILA DANIELS )
#B07622, )
 )
        Petitioner, )
 )
    v. ) Case No: 04 C 1205
 )
CALLIE BAIRD, Executive )
Director of the Cook County )
Correctional Center,[1] )
 )
        Respondent. )

DOCKETED
JUL 2 2 2004

MEMORANDUM OPINION AND ORDER

Sheila Daniels ("Daniels"), who is awaiting resentencing on her first degree murder conviction after two trials and multiple appeals in the state court system,[2] has come to this federal court seeking habeas relief under 28 U.S.C. §2254 ("Section 2254"). At this point the Illinois Attorney General, representing the respondent custodian, has acknowledged that

---

[1] Because the petitioner has been transferred to the custody of the Cook County Sheriff pursuant to her remand for a new sentencing hearing (ordered in "Daniels III," 346 Ill.App.3d 350, 805 N.E.2d 1206 (1st Dist. 2004)), the identity of the respondent custodian must be changed accordingly--see Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Court ("Section 2254 Rules"). But even if that change in custody had taken the case out of the purview of this District Court (as it has not), no transfer of the case would have been necessary (Moore v. Olson, 368 F.3d 757, 758 (7th Cir. 2004)).

[2] Like Daniels, this Court will refer to all stages of her initial trial proceedings and related appeals as "Daniels I" and to her retrial and its related appeals (including Daniels III) as "Daniels II."



Daniels has exhausted her state court remedies as required by Section 2254(b)(1)(A), and there is likewise no dispute as to the timeliness of her petition under 28 U.S.C. §2244(d)(1), so that it is in order to address her petition under the standard prescribed by Section 2254(d).

Daniels' Petition advances three claims. Though her counsel has set them out in extended form, the following excerpts from Petition Part III Ex. A identify them adequately (in each instance the cases cited by Daniels' counsel have been omitted in the interests of brevity):

> Claim I: The refusal of the state courts to accord me an evidentiary hearing on my motion to suppress evidence predicated on the 5th, 6th and 14th Amendment to the Constitution of the United States, and the introduction by the State of Illinois of my oral and written statements at my trial resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court....
>
> Claim II: The refusal of the state courts to accord me my guarantee to compel witnesses and documentary evidence in my behalf to show bias on the part of State witnesses and to support my motion to suppress statements predicated upon the Sixth and Fourteenth Amendments to the United States Constitution denied me my rights to Confrontation (cross-examination) and to due process of law which resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court....
>
> The refusal of the state courts to accord me my guarantee to compel witneeses and documentary evidence on my behalf predicated upon Sixth and Fourteenth Amendments to the United States Constitution denied me my right to have conpulsory process for obtaining witnesses in my favor, and to due process of law, and

resulted in a decision that was contrary to or involved
an unreasonable application of, clearly established
Federal law as determined by the United States Supreme
Court....

The refusal of the state courts to accord me my
guarantees against self-incrimination and to due
process of law pursaunt to the 5th and 14th Amendments
to the United States Constitution by denying my request
for an evidentiary hearing into the voluntariness of my
statements, and the introduction of those statements
into evidence at my trial, resulted in a decision that
was contrary to or involved an unreasonable application
of, clearly established Federal law, as determined by
the United States Supreme Court....

Claim III: The refusal of the state courts to permit
the jury to view the hospital records after its
repeated requests to see them elevated a state hearsay
rule above my constituional guarantee to a fair trial
and due process of law as guaranteed to me by the due
process claim of the Fourteenth Amendment to the
Constitution of the United States, and resulted in a
decision that was contrary to or involved an
unreasonable application of, clearly established
Federal law, as determined by the United States Supreme
Court....

All three claims have been ably addressed in the respondent custodian's Answer (cited "R. Ans. --") and its relevant exhibits (cited "R. Ex. --"). In turn Daniels' able counsel has filed a Reply (cited "P. R. Mem. --") together with minimally overlapping exhibits (cited "P. Ex. --"). Those submissions demonstrate that there is no need for an evidentiary hearing because the issues can be dealt with fully on the papers, so that it is in order for this Court to "make such disposition of the petition as justice shall require" (Section 2254 Rule 8(a)).

3

## Claim I

Both sides' counsel correctly identify <u>Williams v. Taylor</u>, 529 U.S. 352 (2000) as providing the prescription for the lens through which the standard prescribed by Section 2254(d) must be viewed (P. R. Mem. 18 and 20; R. Ans. 8-9). And those requirements demand far more than a disagreement with the state court's decision (if such a disagreement were indeed to exist), for the deference the statute accords to state court adjudication calls for a determination that they have engaged in an "<u>unreasonable</u> application of federal law,...different from an <u>incorrect</u> or <u>erroneous</u> application of federal law" (<u>Williams</u>, 529 U.S. at 412 (emphasis in original)). Similarly as to factual matters, relief is provided only if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" (Section 2254(d)), which is further tempered by the Section 2254(e)(1) mandate that state court factual issues enjoy a presumption of correctness that is rebuttable only by clear and convincing evidence (<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 341 (2003)).

To turn to Claim I, it is thus clear that Daniels cannot now attack the state court's factual finding (upheld as well on appeal) that she went voluntarily to the police station, where she gave her inculpatory statement. What Daniels seeks to do instead is to argue that her initial unsuccessful challenge to

4

the admissibility of that statement was limited to the issue of such involuntariness as such, and did not rest at all on the claimed unconstitutional violation of her Miranda rights, so that she can still assert that later-claimed violation in the federal system. And to that end, Daniels devotes her entire Claim I argument (P. R. Mem. 9-18) to launching several onslaughts from different perspectives on the Illinois Appellate Court's barring of that claim on "law of the case" principles (Daniels III, 346 Ill. App. 3d at 355-63, 805 N.E.2d at 1210-16).

As R. Ans. 13 and 18 accurately reflect, Daniels' success on that score would be essential if she hoped to prevail here on her Claim I, because a state court decision that rests on law of the case principles normally constitutes a paradigmatic example of an independent and adequate state ground that would foreclose federal constitutional attack. That concept has been definitively described as "a state law ground that is _independent_ of the federal question and _adequate_ to support the judgment" (Lee v. Kemna, 534 U.S. 362, 375 (2002), quoting--with added emphasis--Coleman v. Thompson, 501 U.S. 722, 729 (1991)). In an effort to dodge that bullet, P. R. Mem. 5 (emphasis in original) urges:

> Thus Petitioner's sole ground in Daniels I in support of her assertions that her statements should be ruled inadmissible both at the trial level and on appeal was that her statements had been procured by the police after her illegal arrest. _Petitioner did not assert a Sixth Amendment violation and did not so much as cite_

5

<u>Miranda v. Arizona</u> in her brief to the Illinois Appellate Court in <u>Daniels I</u>.

But Daniels has shot herself in the foot (or worse) in that respect. At P. R. Mem. 9 she quotes the grounds that she raised in her Petition for Leave To Appeal to the Illinois Supreme Court from <u>Daniels III</u>, which discussed the "law of the case" doctrine at length and concluded by affirming her conviction but ordering a remand for a new sentence. But her Ex. H, from which that quotation is purportedly taken, is instead a photocopy of her Petition for Leave To Appeal back in June 1995 in <u>Daniels I</u>.[3] Here is the highly relevant excerpt from that initial Petition, which shows all of the bases on which Daniels <u>originally</u> sought to attack the admission of her inculpatory statements at the police station:

> The taking of Petitioner by the police from her home and her retention in the police station from 5:00 p.m. until 3:00 a.m., admittedly without probable cause, and without advising her of her <u>Miranda</u> rights, was a seizure and interrogation in derogation of the United States Constitution, Amendments IV, V, VI, and XIV, and of the Illinois Constitution, Article I, Sections 2, 6, 8, and 10, such as to render her 3:00 a.m. statements to a polygraph operator inadmissible.[4]

What then followed was an extended argument in support of that

---

[3] R. Ex. B is a photocopy of the original of that Petition. It bears Illinois Supreme Court Case No. 79240 and a Supreme Court "Filed" stamp dated June 13, 1995.

[4] That was the third of the five "Points Relied Upon for Reversal" listed at pages 2 and 3 of the Petition for Leave To appeal.

6

position.  And to avoid any possible risk of an inaccurate summarization of Daniels' argument at that time, this opinion attaches its pages 13-15, which expressly and repeatedly advert to the absence of <u>Miranda</u> warnings and to the several constitutional provisions relied on, as well as to the claimed involuntariness of Daniels' continued presence at the police station, as grounds for the inadmissibility of her statements.

It is thus undeniable that in <u>Daniels I</u>, represented by the same experienced and well-qualified criminal defense lawyer who is her attorney in this proceeding, Daniels treated her motion to suppress as a seamless and all-purpose attack, not as one splintered into segmented claimed constitutional infirmities (even if this Court were to leave aside the question whether such divisible treatment would be permissible without Daniels running afoul of preclusion principles).  With Daniels herself thus having urged the <u>Miranda</u> issue as part of the constitutional bases--under all of the constitutional provisions on which she now seeks to rely--for challenging the admissibility of her inculpatory statements the first time around, she simply will not be permitted to attack the Illinois Appellate Court's treatment of the issue as barred the second time around on law of the case principles.  Hence those principles form an independent and adequate state ground for the rejection of Daniels' Claim I.

## Claim II

Daniels begins her argument in support of her second claim by stating (P. R. Mem. 18):

> The Petitioner respectfully adopts the entire argument presented supra in support of Claim I as argument in Claim II.

To that extent, Daniels' failure as demonstrated in the preceding section of this opinion equates to an identical failure here.

In that respect Daniels fails to distinguish between her knowledge of facts that could serve as the basis for possible habeas relief and the obtaining of additional evidence to bolster those facts. There is no question that she knew of the asserted police beatings of her two brothers at the time of her first trial--indeed the same Petition for Leave To Appeal following her original trial referred to those abuses. What leads her to claim that she has "new evidence" is not as to those matters as such--things that were known to her from the beginning--but rather the issuance of a report by the Chicago Police Department's Office of Professional Standards that has confirmed the existence of such abusive conduct on a large-scale basis.

That attempted characterization of "new evidence" glosses over the controlling issue, as properly held by the Illinois Appellate Court, that Daniels did not treat that police conduct as in any way causally linked to her confession when she originally moved for its suppression. Although Daniels now

8

posits several asserted violations of her constitutional rights in Claim II, the thrust common to all of them is the claim that she was deprived of the opportunity to prove that the police's physical abuse of her two brothers, plus the threat that they would continue to be beaten and abused, caused her to make the self-incriminating statements she sought to suppress. But her original motion to suppress said nothing at all in those terms--what she now seeks to do is to rewrite history as well in that regard, attempting to escape the Daniels III treatment of her entire second presentation as barred under law of the case principles.

Thus contrary to what Daniels' attorney now argues, the identical law of the case doctrine forecloses his attempt at revisionist history in this respect as well. Once again Daniels is blocked by the proposition that an independent and adequate state law determination precludes the grant of federal habeas relief on constitutional grounds.

### Claim III

This final claim by Daniels merits no more than short shrift. It seeks to dress up a straightforward evidentiary ruling--one that barred the admission of documents because no proper foundation for their admissibility had been laid--in constitutional garb. This is not, as Daniels' counsel would have it, an application of hearsay principles that would run afoul of

Chambers v. Mississippi, 410 U.S. 284, 302 (1973), but rather a straightforward issue of state law regarding a failure of proof. This final claim also succumbs because of its failure to meet the standards of Section 2254(d).

## Conclusion

As indicated earlier, Section 2254 Rule 8(a) calls for "such disposition of the petition as justice shall require." And what has developed from a review of the parties' submissions is that "it plainly appears...that the petitioner is not entitled to relief in the district court" (Section 2254 Rule 4, as adapted to cases where further input has been provided beyond what might suffice under that rule for summary dismissal). Both the Petition and this action are accordingly dismissed.

_____
Milton I. Shadur
Senior United States District Judge

Date: July 21, 2004

3.

### INTERROGATING PETITIONER IN THE POLICE STATION WITHOUT PROBABLE CAUSE TO ARREST AND WITHOUT BENEFIT OF *MIRANDA* WARNINGS FOR MANY HOURS RENDERED HER SUBSEQUENT STATEMENTS INADMISSIBLE.

The police came to Petitioner's home at 5:00 p.m., and after telling her they needed her assistance in the investigation she accompanied them to the police station. Petitioner was never told that she was free to leave, was continually interrogated without *Miranda* warnings, and at 3:00 a.m. confessed to a polygraph operator. The State acknowledged that the police never possessed probable cause to arrest Petitioner until she made her 3:00 a.m. self-incriminations, but successfully contended to the trial court that Petitioner's continued presence at the police station was "voluntary". The United States Supreme Court and this Court have repeatedly condemned police tactics which include taking presumably innocent citizens to a police station, interrogating them without benefit of *Miranda* warnings, and then, after securing a confession, contending that their presence in the police station was "voluntary". *Dunaway v. New York* (1979), 442 U.S. 200; *People v. Holveck* (1990), 141 Ill.2d. 84, 565 N.E.2d. 919. Many appellate court cases have likewise reversed convictions on similar but far less egregious facts.[4] Indeed, in *People v. Walls*

---

[4] See e.g. *People v. Hardaway* (1987), 163 Ill.App.3d. 396, 516 N.E.2d. 830; *People v. Cole* (1988), 168 Ill.App.3d. 172, 522 N.E.2d. 635; *People v. Stofer* (1989), 180 Ill.App.3d. 158, 534 N.E.2d. 1287;

13

(1991), 220 Ill.App.3d. 564, 581 N.E.2d. 264, Justice Murray became so appalled by such police tactics that in reversing a conviction he wrote:

> "Despite the fact that arrest without probable cause has been considered illegal in Anglo-American jurisprudence since the adoption of the Magna Carta in 1215 A.D., such arrests seem almost commonplace in Cook County, if the number of appeals involving this issue is any criteria. Furthermore, the State's response to such appeals is generally the same -- consent. However, given the circumstances, we often find such explanations disingenuous. Such is the case here." 581 N.E.2d. 264, at 273.

In *Walls*, Justice Murray also noted that "a legal arrest may become an illegal detention with the passage of time", and noted that in a previous case, *People v. Young* (1990), 206 Ill.App.3d. 789, 564 N.E.2d. 1254, the court had found "it less than credible that a defendant would freely choose to remain in a small interrogation room at the police station overnight...." 581 N.E.2d. at 274. That one would choose to remain in a police station until the wee hours of the morning answering police inquiries, in preference to being at one's own home, has also been described as an "absurd notion". *People v. Gordon* (1990), 198 Ill.App.3d. 791, 556 N.E.2d. 573, 577. The Appellate Court

---

*People v. Downey* (1990), 198 Ill.App.3d. 704, 556 N.E.2d 300; *People v. Lucey* (1990), 204 Ill.App.3d. 1019, 562 N.E.2d. 1158; *People v. Young* (1991), 206 Ill.App.3d. 789, 564 N.E.2d. 1254; *People v. Booker* (1991), 209 Ill.App.3d. 384, 568 N.E.2d. 211; *People v. Halmon* (1992), 225 Ill.App.3d. 259, 587 N.E.2d. 11882; *People v. Reynolds* (1994), 257 Ill.App.3d. 792, 629 N.E.2d. 559; *People v. Bass* (1994), 257 Ill.App.3d. 893, 629 N.E.2d. 592.

14

Opinion in the case at bar can not be reconciled with these holdings. (Opinion, pp. 13-15)

The circumstances of the seizure and interrogation of Petitioner in the case at bar, including the absence of counsel, and the absence of *Miranda* warnings, and the procurement of her confession violated Petitioner's constitutional guarantees under the United States Constitution, Amendments IV, V, VI and XIV, and the Illinois Constitution, Article I, Sections 2, 6, 8, and 10.